492 So.2d 94 (1986)
Edward Earl STAFFORD, et al.
v.
Todd R. UNSELL, et al.
No. 85 CA 0456.
Court of Appeal of Louisiana, First Circuit.
June 24, 1986.
*95 Jack M. Dampf, Baton Rouge, for Edward Earl Stafford, individually and on behalf of his minor son, Edward Earl Stafford Jr.
Todd R. Rossi, Baton Rouge, for American Hardware Mut. Ins. Co.
Horace A. Lane, Baton Rouge, for Madeline W. McConnell, James Wilson McConnell, State Farm Mut. Auto. Ins. Co., Todd R. Unsell and William R. Russell.
Before LOTTINGER, CRAIN and PONDER[*], JJ.
CRAIN, Judge.
This is a suit brought on the behalf of a guest passenger involved in an intersectional accident. The plaintiff, Edward Stafford, Sr. sues individually and on behalf of his minor son, Edward Stafford, Jr. (Scooter). Defendants are Todd Unsell, the driver of the car Scooter was riding in; Madeline McConnell, the driver of the other car involved in the collision; her automobile insurer, State Farm; and Stafford, Sr.'s uninsured motorist carrier, American Mutual Hardware. Apparently, Unsell was uninsured and although named as a defendant, the plaintiffs were unable to locate him and he was never served. After trial a jury rendered a verdict finding Unsell 100% negligent and Madeline McConnell free from fault (0% negligent). Damages were awarded in a lump sum of $35,000. Both American Mutual and the plaintiffs timely moved for a judgment notwithstanding the verdict (JNOV) and alternatively for a new trial on the grounds that the jury's finding that McConnell was free from fault was clearly contrary to the law and evidence. Plaintiffs also sought to have the damage award increased.
The trial court granted the JNOV, finding that McConnell was 30% negligent and that Unsell was 70% negligent. The motions for a JNOV and a new trial on damages were denied. The judgment rendered American Mutual, McConnell and State Farm solidarily liable for $35,000, limiting American Mutual's solidary liability to $5,000, the sum of its UM policy limits.
*96 State Farm has appealed, alleging that the trial court erred in granting the JNOV. Plaintiffs answered the appeal alleging the trial court erred in not rendering a JNOV to increase the damage awards or alternatively in not granting a new trial on the issue of damages.

THE ACCIDENT
The accident occurred on February 9, 1982, at approximately 9:30 p.m. in the city of Baton Rouge. It was a cool, clear evening. Scooter was riding as a passenger in the front seat of a car driven by Unsell. They were proceeding southbound in the inside lane of Sherwood Forest Boulevard (Sherwood Forest) near its intersection with Lake Sherwood Boulevard (Lake Sherwood). Sherwood Forest is a major 4 lane thoroughfare with a median or neutral ground between the north and south bound lanes. Lake Sherwood runs east and west and forms a "T" intersection from the east side of Sherwood Forest. Motorists on Sherwood Forest have the right of way. Motorists traveling west on Lake Sherwood must eventually turn north or south onto Sherwood Forest, after encountering a stop sign.
McConnell had been traveling west on Lake Sherwood when she stopped at the sign and attempted to turn left or south on Sherwood Forest. She crossed the north bound lanes of Sherwood Forest and the neutral ground. Immediately upon executing a left turn into the inside southbound lane, her automobile was struck in the rear by the front end of the Unsell vehicle.
Scooter testified at trial in regard to the accident as follows:
We were going down Sherwood Forest south and she pulled out into the median rather slow, and we figured she saw the cars and was going to slow to a stop there and wait for traffic to clear but she eased out in front of us and wewe hit her.
He also stated that they were traveling in a group of cars at about 45 mph, the posted speed limit.
McConnell testified that she came to a complete stop at the sign and waited until traffic was clear in the north bound lane immediately to her left. She then looked right and saw the lights of several cars near a bridge several hundred feet away. She executed her turn and was proceeding southbound when struck by Unsell. She testified that she was certain when she started her turn that she had ample time to safely complete it. She further stated that she thought she made the turn in one continual motion, not stopping or hesitating in the neutral ground. However, she admitted that she never saw the Unsell vehicle.

THE JNOV AND McCONNELL'S NEGLIGENCE
Both sides called expert witnesses as accident reconstructionists. Each used what were essentially the same facts in giving his respective opinion. These opinions were based primarily on the distance from the intersection to the bridge, the posted speed limit, skid marks at the scene and the time required to execute the left turn. State Farm's expert concluded McConnell had sufficient time to safely execute the turn if Unsell had been traveling at the speed limit. On the other hand, plaintiffs' expert concluded that even at the speed limit McConnell's actions made an accident inevitable.
The differences in their conclusions were based on slightly different assumptions used in making their calculations, e.g., exactly where in relation to the bridge the Unsell vehicle was when McConnell executed her turn and how long did it take her to make the turn. McConnell could not be precise in determining where the Unsell vehicle was when she executed her turn, nor in the time taken to do so. Accordingly, each expert made reasonable assumptions that were more favorable to the side for whom they testified. We choose not to review these calculations as it was within the province of the jury to accept or reject testimony of either expert witness as it saw fit. Nevertheless, regardless of which witness the jury may have chosen to favor, *97 undisputed evidence impressed the trial court that regardless of Unsell's negligence, McConnell was also guilty of negligence which contributed to the accident.
The correct standard for a trial court to follow in granting a JNOV, is to determine, whether, after considering all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict on the issue. Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.1985), writ denied, 476 So.2d 353 (La.1985); Bickham v. Goings, 460 So.2d 646 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1246 (La.1985). La.C. C.P. art. 1811. It is the duty of this court to determine whether the trial court's findings in rendering the JNOV were manifestly erroneous. Wooten v. Louisiana Power & Light Co., 477 So.2d 1142 (La.App. 1st Cir.1985); Bickham, 460 So.2d at 650.
Viewing all the evidence in the light and with all reasonable inferences in favor of McConnell, the following was established: McConnell made a full stop at Lake Sherwood and observed traffic several hundred feet away. She felt she would be able to safely execute a left turn and she proceeded. It took from six to seven seconds for her to leave the stop sign, cross over, and begin heading south on Sherwood Forest Boulevard. Within 35 feet (approximately two car lengths) from the median of the intersection heading south, she was struck in the rear by the Unsell vehicle. In regard to Unsell's conduct, the most reasonable inference from the evidence that can be drawn in favor of McConnell is that Unsell was speeding, but doing no more than 50 mph in a 45 mph zone. Significantly, McConnell's expert would not say that the accident would not have occurred had Unsell been traveling at the posted rate of speed.
The one entirely undisputed fact is that the collision occurred within only 35 feet of the intersection. The trial court concluded that at this distance, McConnell turned in front of Unsell when he was close enough to present an immediate hazard. At 45 mph, Unsell's vehicle would cover the 35 feet in approximately ½ of a second. Even after accounting for braking time and reduction of speed, Unsell's traveling at 5 mph over the speed limit was not the sole, substantial cause of the accident.
Part of the duty of a motorist entering another highway from an intersection is to maintain a reasonably continuing observation of the movement of approaching traffic where the vehicles are so close as to constitute an immediate hazard. See Crandall v. Enterprise Electric, Inc., 277 So.2d 247 (La.App. 4th Cir.1973). McConnell took approximately seven seconds to complete the turn. She testified she never saw Unsell's vehicle, but had only observed a "pack" of cars at the bridge when she started her turn. From the evidence it is clear that during her turn she failed to maintain any observation of approaching traffic, failed to see Unsell's vehicle as it approached and failed to yield the right of way. If she had kept a proper lookout, she would have seen his approaching vehicle and determined it was not clear for her to enter the south bound lane of Sherwood Forest. She could have waited in the neutral ground for traffic to clear. The trial judge categorized the jury's finding McConnell free from fault as one of the most erroneous findings of fact he had ever witnessed. We find no manifest error in the trial court's conclusion.
The defendant maintains that the trial court erred in substituting his judgment of the facts for that of the jury, and passing on the credibility of the witnesses and weighing the evidence, contrary to his role in ruling on a JNOV. This contention is not supported by the record. The primary evidentiary facts necessary for the trial court's decision are essentially undisputed. The trial court is predominately determining legal questions which are clearly within its province. Wooten, 477 So.2d at 1142, Rougeau v. Commercial Union Insurance Company, 432 So.2d *98 1162 (La. App. 3rd Cir.1983), writ denied, 437 So.2d 1149 (La.1983).
Defendant further complains that the lower court erred in rendering the JNOV in light of its instructions to the jury. Specifically, the following instruction was given:
You are free to assign whatever percentage of fault you feel appropriate. To be more specific, you can find that Madeline McConnell was one hundred percent at fault and Mr. Unsell zero percent at fault, or the reverse. You can find Todd Unsell with one hundred percent fault and Mrs. McConnell zero percent at fault, or any combination of numbers in between ...
Defendant urges that in giving this instruction the trial court acknowledged that reasonable minds could differ on the question of McConnell's negligence and left the decision up to the jury. Defendant does not cite us to any authority for such a proposition. The trial court gave a general charge to the jury about its role as factfinder. Such a charge does not in any way abrogate the trial court's authority to grant a JNOV pursuant to La.C.C.P. art. 1811. This assignment lacks merit.

DAMAGES
The jury returned a general verdict finding the plaintiffs entitled to a lump sum of $35,000. In answer to defendant's appeal, plaintiffs claim the trial court erred in not rendering a JNOV and increasing damages or in not granting a new trial on the issues of damages.
As a result of the accident Scooter suffered a severely broken nose and a broken foot. A calcium deposit formed on his foot as the bone healed. He alleged that the deposit caused severe pain when he engaged in any strenuous physical activity, kept him from properly training and resulted in a loss of his earning capacity. Scooter's father owned a motorcycle shop, and Scooter had been totally immersed in amateur motorcycle racing from the age of 4. At 15 he was one of the top ranked amateur racers in the country. He anticipated turning professional at 16 and signing a contract with a major motorcycle manufacturer/sponsor. His expert testified such a contract would be worth $40,000-$50,000 the first year alone.[1]
Testimony at trial indicated that motorcycle racers have to be superbly conditioned athletes and that by the age of 24, a racer's career is generally over, their physical endurance having burned out. Scooter claimed that the injury to his foot kept him in constant pain, and that he was never able to maintain a physical conditioning program long enough to regain top conditioning. As a result, his racing performance has been so poor that he has been unable to get a contract.
The jury returned a general verdict. Consequently, we have no way of knowing what amounts, if any, it chose to award for pecuniary and non-pecuniary damages. However, the trial court refused to disturb the award of $35,000 finding it within the jury's discretion. In regard to refusing to grant a JNOV, the trial judge was not clearly wrong. The evidence did not point so strongly and overwhelmingly in plaintiffs' favor that reasonable minds could not differ. Scooter claimed his loss of future earnings were in the area of $400,000. Certainly, a top professional racer could make this amount throughout a successful career. However, testimony indicated that being a top amateur does not automatically translate into being a top professional, and the hazards of racing can end a promising career abruptly. Any such award would be somewhat speculative, and the jury could have found these damages were not sufficiently proved by a preponderance of the evidence. Moreover, Scooter had various other physical injuries not related to this accident, including shoulder surgery, which the jury could have reasonably believed *99 contributed to or solely caused his loss of racing skills. The jury also could have reasonably believed that Scooter's pain was not as severe or disabling as claimed and that his performance was not significantly hampered. He only consulted a doctor once over several years in regard to the pain allegedly caused by the calcium deposit. On the evidence presented, whatever factual conclusions the jury made were certainly within its province. Under the facts of this case, the award is not so low as to amount to an abuse of discretion, nor do we find an abuse of discretion in the trial court's refusal to grant a new trial. Lytell v. Goodyear Tire and Rubber Co., 439 So.2d 542 (La.App. 1st Cir.1983).

EXPERT FEES
Plaintiffs complain that the trial court erred in awarding expert fees. The trial court, apparently inadvertently, failed to make any award for the fee of Dr. Loupe, an orthoepedic surgeon. The court erred in not setting a fee. La.R.S. 13:3666. Dr. Loupe was Scooter's treating physician for his foot injury. His testimony was introduced by way of a 22 page deposition which lasted ½ hour. We set his fee at $75.00.
The trial court awarded $150 for Dr. Jack Breaux, a specialist, who treated Scooter for his broken nose. Dr. Breaux testified that he spent approximately 4 hours in preparation, attendance and in testifying at trial. The fees of both experts in accident reconstruction were set at $100. A trial court has great discretion in awarding expert witness fees. Oshinski v. Central National Insurance Co. of Omaha, 432 So.2d 929 (La.App. 4th Cir.1983), writ denied, 440 So.2d 148 (La.1983). We believe these figures were set within the trial court's lowest range of discretion and therefore we cannot raise them.
The court set David Jordon's fee at $100. Jordon was called by plaintiffs as an expert witness in the field of motorcycle racing, procurement of racers and racers' salaries. Defendant argues that Jordon only testified as to facts and circumstances which could be stated by a lay witness and therefore he is not entitled to an expert witness fee. Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir.1976), writ denied, 342 So.2d 872, 342 So.2d 1109 (La.1977). We disagree and find that the trial court was correct in accepting Jordon as an expert witness. It is clear from his testimony and qualifications that his opinion was given regarding Scooter's potential earnings and ability to be successful as a professional racer, both before and after the accident. This was clearly not a matter within a lay person's expertise. Jordon had superior knowledge and information about the subject.
Jordon testified that preparation, travel time and testifying took approximately 10 hours. He was flown in from Georgia in order to testify. In setting expert fees, courts should consider the value of the time employed and the degree of learning or skill required. Hebert v. Diamond M. Co., 385 So.2d 410 (La.App. 1st Cir. 1980), writ denied, 390 So.2d 203 (La. 1980). The amount of time involved in travel is also a proper inquiry. Pittman and Matheny v. Davidge, 189 So.2d 706 (La.App. 1st Cir.1966), writs denied, 249 La. 768, 191 So.2d 143, 249 La. 771, 191 So.2d 144 (1966). Under the circumstances, we feel $350 was the lowest amount reasonably within the court's discretion to set as a fee for Mr. Jordon.
Accordingly, for the above and foregoing reasons, the decision of the trial court, as amended, is affirmed. Appellant is to pay all costs.
AMENDED AND AFFIRMED.
NOTES
[*] Judge Elven E. Ponder, Retired, has been assigned temporarily to this court by the Supreme Court of Louisiana to fill the vacancy created by the election of Justice Luther F. Cole to the Supreme Court.
[1] This contract would be worth only $12,000 in cash, but 5 to 6 racing bikes valued at several thousand dollars each, mechanics and expenses were included. Bonuses for performance would also be awarded in addition to prize money earned.