544 So.2d 742 (1989)
Peggy C. JONES, Plaintiff-Appellee,
v.
NORTHBROOK INSURANCE COMPANY, Defendant-Appellant.
No. 88-107.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*743 Brittain, Williams, McGlathery & Passman, Joe Payne Williams & Peggy Jones, Natchitoches, for plaintiff-appellee.
Gold, Weems, Bruser, Sharp, Sues & Rundell, Robert G. Nida/Raymond L. Brown, Jr., Alexandria, for defendant-appellant.
Before GUIDRY, DOUCET and LABORDE, JJ.
DOUCET, Judge.
Plaintiff, Peggy C. Jones, brought suit against defendant, Northbrook Insurance Company, for damages resulting from an automobile collision with defendant's insured. After a trial by jury, defendant appeals a judgment notwithstanding the verdict that assessed all fault to the defendant's insured, awarded plaintiff $85,000.00 for general damages, and awarded plaintiff $71,400.00 for loss of future earnings. Defendant now appeals from this adverse judgment.

FACTS
Neil Blanchard, defendant's insured, was employed as a bread delivery man. On the morning of May 3, 1985, Blanchard parked his bread truck in front of the Winn Dixie Grocery Store in the Cane River Shopping Center, so that he could make his bread delivery to the Winn Dixie. Blanchard's *744 truck was parked facing east parallel to the curb in the fire lane in front of the Winn Dixie. A soft drink truck driven by John Oweki was parked behind Blanchard's truck, also parallel to the curb in the fire lane in front of the Winn Dixie.
After Blanchard completed his bread delivery to the Winn Dixie, he entered his truck from the curb side of the vehicle, started the truck, checked his side mirror and saw no vehicles approaching, and began driving away from the Winn Dixie. Blanchard never applied his brakes or activated his turn signal before he began moving. At the same time, plaintiff was driving her two-door Subaru automobile eastward past the Winn Dixie in the normal travel lane of the shopping center parking lot, on her way to use a pay phone at the east end of the shopping center. Myra Perry, plaintiff's housekeeper, was riding in the front passenger seat of plaintiff's automobile.
As plaintiff was driving past Blanchard's truck, Blanchard began driving away from the Winn Dixie on his way to his next delivery and the two vehicles collided. The left front bumper of Blanchard's truck struck the passenger side of plaintiff's car just past the middle of the car and scraped and dented the car back along the length of the car for a distance of approximately three feet. The only damage to Blanchard's truck was that the left end of the front bumper, which wrapped around the left front corner of the truck, was pulled straight out in front of the truck.
Haywood Wallace, who was a manager at the Winn Dixie at the time of the accident, testified that he was standing in the front of the store, heard the collision and immediately turned around and looked at the vehicles through the front windows of the store, then went outside. He stated that when he got outside the vehicles had not moved from where they stopped after the collision. He stated that Blanchard's truck had been moved from where it had been parked while Blanchard was making his delivery. He stated that the truck was angled out away from the curb as if it had been making a left turn at the time of the collision.
Blanchard claimed that prior to the collision he was only moving forward and did not turn left. However, he admitted that after the collision his truck stopped in such a position that the front of the truck was angled out farther away from the curb than the back of the truck.
Corporal Randy Weaver, the police officer who investigated the accident, testified that after the accident Blanchard told him that he (Blanchard) was already moving forward and was turning left when the collision occurred. The accident report indicates, in the section titled "Movement Prior to Accident," that Blanchard was making a left turn. The accident report indicated that the estimated speed of plaintiff's vehicle was 15 miles per hour and that of Blanchard's truck was five miles per hour. The accident report also indicates that the location of the vehicles at the time the accident was investigated was the "point of impact." The sketch of the accident scene in the report shows the bread truck angled out away from the curb.
Plaintiff testified that she was driving past Blanchard's truck in a straight line at about 15 to 20 miles per hour when the truck just turned into her. She stated that there was no turn signal or tail lights on the truck or any other indication that the bread truck was anything other than just parked there. Plaintiff stated that on impact she banged her left knee on the dashboard or the driver's door and that for several minutes her leg felt numb or "asleep" and felt like it was "going to fall out from under" her. That evening, plaintiff received treatment for her left knee at the Natchitoches Parish Hospital emergency room. Her injury was diagnosed that evening as a strained left knee.
Myra Perry, plaintiff's housekeeper, testified that plaintiff was proceeding forward in the normal traffic lane of the parking lot and was not in a hurry and not driving fast. She stated that as plaintiff drove past the bread truck, the truck hit the plaintiff's car. She stated that prior to the collision there was no sign of movement *745 from the truck. She stated that plaintiff passed "pretty close" to the bread truck.
John Oweki, the driver of the soft drink truck that was parked behind Blanchard's truck, testified that he had climbed up over the tire on the parking lot side of his truck in order to remove a case of soft drinks when he heard plaintiff's tires squeal as she turned right into the parking lot of the shopping center. He stated that he looked up and saw plaintiff's car leaning toward the driver's side as it pulled into the parking lot, and then he looked back into his truck. He stated that as plaintiff's car passed his truck it was going fast and passed close to his truck. However, Oweki admitted that he was concentrating on his work at the time and that his estimate of the car's speed and distance from him as it passed him was based only on the sound the car made as it passed him, since he did not actually see the car pass him.
Plaintiff was involved in a second automobile accident on July 23, 1985. Plaintiff received injuries to her neck and back in that accident and received medical attention for those injuries the same day. Plaintiff testified that her left knee was not injured in the second accident. Hospital records of plaintiff's treatment on that day show that she had no complaints of pain in her left knee after the accident and that she received no treatment for her left knee on that day.
After trial of this matter the jury found plaintiff to be 80% at fault, and Blanchard to be 20% at fault in the accident. The jury awarded plaintiff $2,669.00 for loss of past wages, and $4,340.00 for medical expenses (sums which counsel had stipulated to be correct for those elements of damages). The jury also awarded plaintiff $741.08 for car rental and $250.00 for her collision damage deductible. Despite being given interrogatories in which the elements of damages were listed, the jury made no award for: physical pain and suffering, past and future; mental pain and suffering, past and future; permanent disability and loss of enjoyment of life; and loss of future earnings and earning capacity.
A judgment consistent with this jury verdict was signed on July 27, 1987. Plaintiff then filed a motion for judgment notwithstanding the verdict and, alternatively, a motion for a new trial on the issues of both liability and quantum, in accordance with La.C.C.P. art. 1811.
A hearing was held on plaintiff's motions on August 19, 1987. The trial court with written reasons granted the motion for judgment notwithstanding the verdict as to liability, reduced plaintiff's negligence to zero, and increased Blanchard's negligence to 100%. The court also increased plaintiff's damage award by adding $85,000.00 for general damages and $71,400.00 for loss of future earnings. The court also conditionally granted plaintiff's motion for a new trial. A judgment in accordance with the court's written reasons was signed on September 28, 1987, and from that judgment defendant has taken this appeal. Plaintiff has neither appealed nor answered defendant's appeal. On appeal, defendant asserts that the trial court erred in granting the motion for judgment notwithstanding the verdict and conditionally granting a new trial on both the issue of liability and the issue of damages.

STANDARD FOR JUDGMENT NOTWITHSTANDING THE VERDICT
This court in Campbell v. Mouton, 373 So.2d 237, 239 (La.App. 3rd Cir.1979) enunciated the standard for ruling on a motion for judgment notwithstanding the verdict. The court stated:
"This standard is succinctly stated in the following language penned by the U.S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969):
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in *746 favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
The Supreme Court in Scott v. Hospital Service District No. 1, 496 So.2d 270 (La. 1986) explained the standard quoting this same language from the Boeing case.
Defendant, in its brief on appeal, cites language from Alumbaugh v. Montgomery Ward & Co. Inc., 492 So.2d 545 (La. App. 3rd Cir.1986), writ denied 495 So.2d 304 (La.1986). The cited language is a summary of the standard for ruling on a motion for judgment notwithstanding the verdict which the court quoted from Rougeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3rd Cir.1983), writ denied 437 So.2d 1149 (La.1983).
In Rougeau, this court stated that the trial judge had correctly adopted the standard to be applied in deciding whether a motion for judgment notwithstanding the verdict should be granted. The court then stated that the trial court's written reasons reflected its rationale and quoted from those written reasons. The trial court's written reasons set out the portion of the Boeing opinion quoted above, however, the last sentence was quoted incorrectly at 432 So.2d at 1166 as follows:
"On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
As originally written in Boeing, that sentence states that if there is "substantial evidence" opposed to a motion for judgment notwithstanding the verdict, the motion should be denied. The sentence also defines "substantial evidence." According to the sentence, evidence opposed to a motion for judgment notwithstanding the verdict is not "substantial evidence" unless it is "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."
As set out in Rougeau, the sentence does not clearly convey the idea of what constitutes "substantial evidence" because the language denoting the definitional aspect of the sentence was omitted. Thus, this court was not entirely correct when it stated in Rougeau that the trial court had correctly adopted the standard to be applied in deciding whether a motion for judgment notwithstanding the verdict should be granted, since the trial court misquoted the standard set forth in Boeing.
In the instant case, the trial court, in its written reasons for judgment, stated:
"The standard to use in deciding whether or not to grant a judgment notwithstanding the verdict was enumerated in Stafford v. Unsell, 492 So.2d 94 (La.App. 1st Cir.1986) wherein the court stated:
`The correct standard for a trial court to follow in granting a judgment notwithstanding the verdict is to determine whether, after considering all of the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict on the issue.'"
This is a proper statement of the standard set forth by the Supreme Court in Scott, supra, and by this court in Campbell v. Mouton, supra. Thus, the trial court applied the proper standard in ruling on the motion for judgment notwithstanding the verdict.
It is the duty of this court to determine whether the trial court's findings in rendering the judgment notwithstanding the verdict were manifestly erroneous. Stafford v. Unsell, supra.
Regarding the issue of liability, the trial court in its reasons for judgment, found that the evidence was uncontradicted that *747 Blanchard failed to see plaintiff's vehicle approaching from the rear on the left side of his truck. It found the physical facts concerning the location of the damage on both vehicles was undisputed. The court found that "the location of the vehicles after impact was established by an overwhelming preponderance of the evidence." The court found that the evidence overwhelmingly showed that Blanchard negligently turned left into plaintiff's car as plaintiff was passing Blanchard's truck.
The trial court also found that the evidence showed no concurrent negligence on the part of the plaintiff. The court stated that "she was guilty of no acts of negligence and reasonable men could not arrive at a contrary verdict on this issue." The court concluded that Blanchard, the defendant's insured, was 100% at fault in the accident.
The record in this case, viewed in the light most favorable to the defendant, reflects the following:
Blanchard's truck was parked parallel to the curb facing eastward in the fire lane in front of Winn Dixie. Plaintiff's car was traveling eastward in the normal travel lane of the parking lot, which was next to the fire lane where Blanchard's truck was parked. Blanchard entered his truck, started the engine, checked his mirror and failed to see plaintiff's car approaching, did not apply his brakes or signal, and began driving toward his next delivery. At the same time, plaintiff's car was passing Blanchard's truck on the left and the two vehicles collided, with Blanchard's left front bumper striking the passenger side of plaintiff's car. The evidence overwhelmingly established that after impact Blanchard's truck came to a stop angled out away from the curb as if he had been making a left turn just prior to the accident. This fact was testified to by Haywood Wallace, who arrived on the scene immediately after the collision. This fact was also depicted in the sketch of the accident report drawn by the investigating officer, and was admitted by Blanchard. Although Blanchard theorized that plaintiff's car pulled him to the left on impact, such an inference is unreasonable and inconsistent with the physical facts. Plaintiff's two-door Subaru could not have pulled the larger, heavier bread truck to the left on impact. Plaintiff was passing the truck on the left so that if plaintiff had caused the collision, her car would have had to be moving to the right prior to impact. If her car was moving to the right prior to impact, it could not have pulled the truck to the left so that the truck came to a stop after impact angled out away from the curb. We are of the opinion that reasonable men could not arrive at a contrary conclusion on this issue.
The party against whom a motion for judgment notwithstanding the verdict is made must be given the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. The trial court, however, is not bound by unreasonable inferences.
It is the province of the jury to resolve conflicting inferences from circumstantial evidence, but permissible inferences must still be within the range of reasonable probability. It is the duty of the court to withdraw a case from the jury when the inference is so tenuous that it rests merely upon speculation and conjecture. Ford Motor Co. v. McDavid, 259 F.2d 261 (4th Cir. 1958), cert. denied 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958).
The trial court found that the only reasonable inference that could be drawn from the evidence is that Blanchard, defendant's insured, simply failed to see plaintiff's car approaching and turned left into it, causing the accident. We do not find this to be manifest error.
As to any concurrent negligence on the part of plaintiff, the trial court found that she was guilty of no acts of negligence. A review of the record reveals no substantial evidence of any negligence on the part of the plaintiff. We find no manifest error in this finding by the trial court.
Turning now to the issue of damages, the trial court found that "the evidence so strongly pointed in favor of the plaintiff that reasonable men could not have concluded that she did not suffer physical pain *748 and suffering, together with mental pain and suffering and permanent disability. The jury awarded her the total amount of her past lost wages and her medical expenses but fell into error as a matter of law when they refused to award any general damages, and again, this court feels duty bound to reverse this injustice."
In Labauve v. Central Mutual Ins. Co., 491 So.2d 146, 148 (La.App. 3rd Cir.1986), this court stated:
"Our courts have recognized that a jury cannot award special damages for personal injuries incurred in an accident and refuse to award any amount in general damages for injuries that present objective symptoms." (Cites omitted.)
Defendant asserts that plaintiff did not present any objective evidence of physical injury so the above rule should not apply. We disagree that plaintiff did not present any objective evidence of physical injury.
When Haywood Wallace arrived at the scene of the May 3, 1985 accident immediately after the collision, he found plaintiff crying in her car. That same evening, plaintiff was examined in the emergency room of the Natchitoches Parish Hospital. Medical records indicate that the attending physician found plaintiff's left knee to be tender to the touch. The physician diagnosed plaintiff as having muscle strain and spasm and gave plaintiff muscle relaxants.
On May 16, 1985, plaintiff's left knee was examined by Dr. John Sandifer, an orthopedic surgeon. Dr. Sandifer testified that there was tenderness along the medial or inner joint line and along the medial collateral ligament of plaintiff's left knee. He also found tightness in plaintiff's left hamstring. He stated that plaintiff's complaints were consistent with plaintiff hitting her knee in an accident such as plaintiff was involved in. Dr. Sandifer diagnosed plaintiff's injury as a strain of the left knee and possible strain of the medial meniscus. He then explained traumatic chondromalacia, a condition which Dr. William Bundrick, an orthopedic surgeon, diagnosed plaintiff as having after he later performed surgery on her left knee. Dr. Sandifer testified that traumatic chondromalacia is a softening or irregularity of the cartilage under the kneecap and/or the distal femur or the femoral condule, which is secondary to some traumatic episode or an injury. He stated that hitting the knee as plaintiff did in the May 3, 1985 accident could set this condition in motion and that symptoms of the condition don't get better and usually worsen. He stated that the absence of bruising is not uncommon with traumatic chondromalacia.
Plaintiff and several witnesses who knew plaintiff both before and after the May 3, 1985 accident testified that after the accident plaintiff cried, limped, rubbed her knee, that the knee gave out on occasion causing plaintiff to fall, and that the knee problem was continuous until the time of plaintiff's operation and beyond that. They testified that the second accident had no effect on plaintiff's knee. They further testified that plaintiff had never had any problem with her knees before the May 3, 1985 accident. All of this evidence was uncontradicted.
Witnesses testified that plaintiff had trouble teaching her special education class because she could no longer squat down near students' desks to give them the individual attention they required and had to drag a chair around the classroom instead. Plaintiff's housekeeper and parents testified that plaintiff has difficulty caring for and playing with her handicapped child, which requires a lot of squatting, picking up and carrying the child, and playing on the floor. Witnesses also testified that plaintiff worried a lot about losing her job because of the days of school she missed and because of the difficulty she now has in giving her students individual attention. All of this testimony was uncontradicted.
Dr. William Bundrick testified that he examined plaintiff's left knee on October 12, 1985. He stated that he found slight swelling of the knee, tenderness over the medial meniscus or inside cartilage, and that there was a "popping" or "clicking" sensation in the knee that he was able to hear and feel. He stated that based on plaintiff's history of no knee problems prior *749 to the May 3, 1985 accident, and her history of continuing knee problems after the accident, more probably than not the chondromalacia in plaintiff's left knee was caused by the May 3, 1985 accident. Dr. Bundrick further stated that plaintiff has a 5% to 10% permanent partial disability of her left leg.
From the foregoing, it is evident that plaintiff exhibited objective symptoms of physical injury after the May 3, 1985 accident and defendant's assertion to the contrary is without merit. Additionally, we believe that reasonable men could not have arrived at a contrary verdict after being presented with this objective evidence of physical injury, therefore, it was proper for the trial court to grant the plaintiff a judgment notwithstanding the verdict on the issue of damages. Campbell, supra; La.C. C.P. art. 1811.
Defendant also asserts that, should this court conclude that the trial court properly granted a judgment notwithstanding the verdict on the issue of damages, the trial court was bound by the standard for appellate review set out in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) in making an award of general damages. However, defendant does not cite, nor are we aware of, any case that is dispositive of this issue.
In granting the judgment notwithstanding the verdict on the issue of general damages, the trial court correctly found that it was an error of law for the jury to award plaintiff special damages for her personal injuries and refuse to award general damages for her personal injuries which presented objective symptoms. Once this finding was made by the trial court, we believe that the trial court became the trier of fact on the issue of general damages. As the trier of fact on that issue, the trial court was not limited by the standard for appellate review set out in Coco, supra.
As was stated in Scott v. Hospital Service District No. 1, supra, at 273:
"The rules governing a motion for judgment notwithstanding the verdict are found in LSA-C.C.P. art. 1811.6 The article does not specify the grounds on which the trial judge may set aside a jury verdict. The Official Revision Comments state that `... a judgment N.O.V. is based on a different standard [from additur and remittitur]namely, that based on the evidence there is no genuine issue of fact. Thus where the trial court is convinced that, under the evidence, reasonable minds could not differ as to the amount of damages [or as to liability], it should have the authority to grant the appropriate judgment notwithstanding the verdict.'" (Footnote omitted.)
Accordingly, since the trial court in the instant case was convinced that reasonable minds could not differ as to the issue of general damages, we believe it had the authority to grant the appropriate judgment notwithstanding the verdict on that issue.
A determination of the measure of damages will not be disturbed on appeal unless the trier of fact abused its much discretion in making the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Coco, supra. "[T]he initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La.Civ.C. art. 1934(3) in the award of damages." Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
In the instant case, the trial court awarded plaintiff $85,000.00 for general damages. After a careful review of the record, we cannot say that the trial court clearly abused its much discretion in making that award.
The trial court also awarded plaintiff $71,400.00 for loss of future earnings because it found that, as a direct result of the May 3, 1985 accident, plaintiff failed to complete and was disqualified from, the Professional Improvement Program for teachers, which would have earned her certain salary enhancements. Defendant asserts that the trial court erred in awarding these damages because the evidence is in *750 conflict as to whether or not the accident caused plaintiff to be disqualified from the program.
Plaintiff testified that, because of her injuries from the May 3, 1985 accident and her surgery, she was unable to continue with the college course work required for her to be maintained in good standing in the Professional Improvement Program. Plaintiff stated she received her last salary enhancement check under the program at the end of September 1986. She stated that she applied for a reinstatement or extension under the program by a letter to Mr. Thomas, the chairman of the local program committee, explaining her circumstances and requesting an extension. She stated she received no response to that letter. Plaintiff testified she visited the office of the local program committee chairman and spoke with the new chairman, Mr. James, who stated he didn't remember seeing her first letter when he moved into his office, but that plaintiff should write another letter. Plaintiff stated she wrote another letter and later received a copy of that letter, along with a letter stating that her application had been rejected. No documentary evidence of any of these letters was introduced into evidence and no member of the local program committee was called to testify.
Betty Hill, chairman of the state Professional Improvement Program Committee, testified as an expert on the rules, regulations, and administration of the program. She stated she had no personal knowledge of plaintiff's situation with the Professional Improvement Program. She stated that under the circumstances of plaintiff's accidents and injuries, if plaintiff had properly applied for an extension, according to her past experience plaintiff's application would be approved.
A plaintiff must prove his case before he is allowed to recover. Likewise, in order to prove his case, it is necessary that the plaintiff prove each and every element of the damages claimed. Reid v. Allstate Ins. Co., 407 So.2d 34 (La.App. 3rd Cir. 1981). As mentioned above, the only evidence that plaintiff properly applied for an extension to her eligibility under the Professional Improvement Program and was rejected, was her own uncorroborated testimony to that effect. The chairman of the state Professional Improvement Program Committee testified that, under the circumstances of this case, in her experience, if plaintiff had properly applied for an extension, plaintiff's application would have been approved. The lack of documentary evidence of plaintiff's applications and rejection, and the failure of plaintiff to call either of the local Professional Improvement Program chairmen to testify, leads to a reasonable inference in favor of defendant that plaintiff's termination from the program resulted from her failure to properly apply for an extension, rather than from the May 3, 1985 accident. We find that the facts and inferences in this case do not point so strongly and overwhelmingly in favor of plaintiff that reasonable men could not arrive at a contrary verdict on this issue, and that the trial court's granting of a judgment notwithstanding the verdict on this issue was therefore manifestly erroneous, and is hereby reversed.
Our findings that the trial court properly granted judgments notwithstanding the verdict on the issues of liability and general damages pretermits a consideration of the trial court's conditional granting of a new trial on those issues. However, since we reverse the trial court's granting of a judgment notwithstanding the verdict awarding damages for loss of future earnings, we must proceed to a consideration of the trial court's conditional granting of a new trial as to that issue.
The standard to be applied by the trial court in granting a motion for a new trial was discussed in Pellerin v. Tudor Construction Co., 414 So.2d 403, 406 (La.App. 1st Cir.1982), writ denied 420 So.2d 455 (La.1982), wherein the court stated:
"However, in a motion for a new trial, the trial judge is free to evaluate the evidence without favoring either party; he may draw his own inferences and conclusions, and may evaluate the credibility of the witnesses to determine if the jury has erred in giving too much credence *751 to an unreliable witness. Thus, the standard for a motion for a new trial is not nearly as stringent as that for a directed verdict. This is rightfully so, inasmuch as a directed verdict deprives a party of his right to be heard by a jury, whereas granting a motion for a new trial merely gives the party an opportunity to present evidence to a second jury, since the first jury has returned an unauthorized or unjust verdict."
With this standard in mind, this court in the instant case must still determine whether the granting of a new trial on the issue of damages for future loss of earnings as a result of the May 3, 1985 accident was an abuse of discretion in light of all the evidence adduced at trial. Pellerin, supra.
We have examined the entire record thoroughly and conclude that the trial court abused its discretion in granting a new trial on this issue. Plaintiff simply did not prove that her termination from the Professional Improvement Program was directly caused by the injuries she received in the May 3, 1985 accident, rather than by her own failure to properly apply for an extension of her eligibility under the program. The only evidence offered by plaintiff to show that she made such application was her uncorroborated testimony that she applied twice to her local Professional Improvement Program committee, received no response the first time, and received a letter of rejection the second time. Plaintiff did not produce either of the two letters of application or the letter of rejection. Further, plaintiff failed to call either of the two committee members to whom she allegedly wrote the letters of application. Additionally, plaintiff did not even testify that the letters of application were accompanied by the medical documentation required by the program. The record reflects that had plaintiff properly applied for an extension of her eligibility under the program, the application would have been granted. We find that the trial court abused its discretion and was, therefore, clearly wrong in conditionally granting a motion for a new trial on this issue.
For the above and foregoing reasons the portion of the trial court's judgment granting a judgment notwithstanding the verdict awarding plaintiff $71,400.00 for loss of future earnings is hereby reversed. The portion of the judgment conditionally granting plaintiff's motion for a new trial is also hereby reversed. Accordingly, the judgment is hereby amended to reduce the award to plaintiff from $164,000.08 to $93,000.08, together with legal interest from the date of judicial demand until paid. The judgment is affirmed in all other respects. All costs of this appeal are to be assessed against defendant.
REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.